Electronically Filed
2/7/2022 2:12 PM
Fifth Judicial District, Blaine County
Stephen McDougall Graham, Clerk of the Court
By: Andrea Logan, Deputy Clerk

Chad M. Nicholson, ISB #7506
McCONNELL WAGNER SYKES & STACEY PLLC
827 E. Park Blvd., Suite 201
Boise, Idaho 83702
Telephone:  208.489.0100
Facsimile:  208.489.0110
nicholson@mwsslawyers.com

*Attorneys for Plaintiffs*

## IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT

## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF BLAINE

| | |
|---|---|
| **MICHAEL and KAREN TACKETT**, a married couple, **THE ESTATE OF ASHLEY MIDBY,**<br><br>Plaintiffs,<br><br>vs.<br><br>**DANIEL JAMES MURPHY, SR.**, personal representative of **THE ESTATE OF JARED MURPHY, HAILEY POLICE DEPARTMENT, BLAINE COUNTY SHERIFF'S OFFICE, and BELLEVUE MARSHAL'S OFFICE**<br><br>Defendants. | Case No. CV07-20-0530<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COME NOW,** Plaintiffs, Michael and Karen Tackett and the Estate of Ashley Midby (collectively "Plaintiffs"), by and through their attorneys of record, McConnell Wagner Sykes & Stacey, PLLC, and for cause of action against Defendants Daniel James Murphy, Sr. as personal representative of The Estate of Jared Murphy ("Murphy Estate"), Hailey Police Department, Blaine County Sheriff's Department, and Bellevue Marshal's Office allege as follows:

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - Page 1**

**PARTIES**

1.      At all times relevant to the allegations herein, Plaintiffs Michael and Karen Tackett are residents of the City of Bellevue, County of Blaine, State of Idaho.

2.      Karen Tackett ("Karen") is the biological Mother of Ashley Marie Midby, ("Ashley") deceased, who died at the hands of Jared Murphy on October 22, 2020, and which is the subject of the instant action.

3.      Michael Tackett ("Mike") is the step-father of Ashley, who died at the hands of Jared Murphy on October 22, 2020, and which is the subject of the instant action.

4.      The Estate of Ashley Midby ("Midby Estate"), Plaintiff, is the decedent's estate of Ashley and duly created by Idaho law.  The Midby Estate has been obligated to expend sums or has been required to have others expend sums on its behalf to cover funeral expenses, and other costs related to or associated with the death of Ashley, deceased, who died at the hands of Jared Murphy on October 22, 2020, and which is the subject of the instant action.

5.      Jared Murphy ("Jared") was a resident of the city of Bellevue, Blaine County, State of Idaho who became deceased on October 22, 2020.

6.      Upon information and belief, Defendant Daniel James Murphy, Sr. ("PR") is the personal representative of the Murphy Estate who resides in the City of Delavan, County of Walworth, State of Wisconsin.

7.Hailey Police Department ("HPD") is the municipal agency responsible for policing Hailey, Idaho and is located in Blaine County, Idaho.  HPD is sued in its own right and on the basis of the acts and omissions of its officials, agents, and employees.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - Page 2**

8.      Blaine County Sheriff's Office ("BCO") is the municipal agency responsible for policing Blaine County, Idaho and is located in Blaine County, Idaho.  BCO is sued in its own right and on the basis of the acts and omissions of its officials, agents, and employees.

9.      Bellevue Marshal's Office ("BMO") is the municipal agency responsible for policing of Bellevue, Idaho and is located in Blaine County, Idaho.  BMO is sued in its own right and on the basis of the acts and omissions of its officials, agents, and employees.

10.     Steve England ("England") is an individual who, on information and believe, is a resident of the County of Blaine, State of Idaho.

11.     Karen, Mike and the Midby Estate will be collectively referred to herein as the "Plaintiffs."

12.     HPD, BCO and BMO will be collectively referred to herein as the "LEO Agencies."

13.     At all times material hereto, Defendants John Does I-XX were and are unknown individuals and/or entities whose actions/inactions contributed to the death of Ashley.

**JURISDICTION AND VENUE**

14.     The Court has jurisdiction over this matter pursuant to Idaho Code §§ 1-705 and 5-514.

15.     Venue is proper, pursuant to Idaho Code § 5-404, because the actions instituting this cause of action occurred within Blaine County and Defendant's estate was formed in Blaine County.

///

///

## GENERAL ALLEGATIONS

16.     Jared and Ashley were involved in a romantic relationship together starting in or about June 2018.

17.     On or about December 1, 2018, Jared and Ashley began living together in a house owned by Jared ("Residence").

18.     On or about January 24, 2018 Jared submitted an employment application to the HPD.

19.     Jared's application revealed two resignations from other law enforcement agencies and a juvenile felony charge for a burglary.

20.     As part of his application, Jared signed a release allowing HPD to access any and all criminal and personal information for a background investigation for possible employment.

21.      Upon information and belief, HPD did not conduct any background check on Jared or conduct any investigations into the resignations.

22.     At some point after Jared's hire by HPD, then Assistant Chief Steve England ("England"), learned that Jared had been forced to resign from a law enforcement agency for driving under the influence ("DUI").

23.     England had also learned that Jared had had a volatile relationship with his ex-wife.

24.     England learned that Jared's ex-wife reported that Jared had emotionally, verbally, and psychologically abused her.

25.     Despite his knowledge of alleged domestic violence, England did not address these claims but did address the DUI issue with Jared.

26.     Jared admitted to the DUI and forced resignation.

27.     At the time this information was revealed, HPD had not yet submitted a challenge or waiver request to the Idaho Police Officer Standards and Training ("POST") for Jared's Patrol

Certification.

28.    HPD failed to disclose Jared's DUI to POST when HPD submitted its challenge or waiver request for Jared's certification.

29.    Upon information and belief, had the DUI been disclosed to POST, the challenge request would have been denied and he would have not been permitted to remain an HPD officer.

30.    Throughout the course of Ashley and Jared's relationship, other HPD officers often witnessed Jared's explosive and abusive outbursts directed toward Ashley.

31.    At least one HPD officer reported Jared had pushed Ashley.

32.    Most HPD officers no longer wanted to hang out with Ashley and Jared because Jared's outbursts made them uncomfortable to be around.

33.    These incidents were brought to Jared's superiors within HPD.

34.    It was later learned these outbursts often happened after Jared had been drinking.

35.    In light of Jared's past DUI and his disturbing behaviors, England informally counseled Jared several times but did not take formal disciplinary or remedial action.

36.    On October 15, 2020, Ashley went to The Advocates in Hailey, Idaho seeking help.  She felt that Jared was going through one of his "cycles" and was about to "blow again" where he becomes cold, mean, distant, and cruel.

37.    Ashley communicated this same information to the Blaine County Sheriff's Office ("BCSO") on October 19, 2020.

38.    Jared did "blow again" in the early morning hours of October 19, 2020.  At this time Ashley texted her mother, Karen, to come get her from the residence at 604 Poplar Street, Bellevue, Idaho 83313.

39.    Because tensions were high and Ashley had advised Mrs. Tackett that Jared was

abusing their dog, Tag, Mrs. Tackett called the police for assistance.

40.    Three different police agencies responded to the call — HPD, BCSO, and the Bellevue Marshal's Office ("BMO").

41.    Once on scene, Mrs. Tackett advised the responding officers of Ashley's situation including that Ashley was fearful of Jared.  Mrs. Tackett explained that Ashley had taken the step of visiting the Advocates for help and to find a way out.

42.    When the officers spoke to Ashley on October 19, 2020, the first words Ashley spoke were: "I needed a safe way to get out of here tonight."

43.    She also told an officer in a whispered tone that, now that law enforcement had been notified and responded, Jared was going to "make her life hell" and that she has five (5) hours of recordings of him "threatening her."

44.    Ashley further explained to officers that as she was packing her things the lights were no longer working because Jared had taken a hammer and was smashing it everywhere.

45.    Ashley also advised of Jared's abuse of Tag, including his having repeatedly picked Tag up by the tail and throat and throwing him downstairs that evening/morning.

46.    Both Ashley and Mrs. Tackett expressed to officers their concerns of leaving Tag behind because Jared would poison him.

47.    Ashley also advised that that evening/morning Jared had been burning their belongings and expressed concern that whatever she left behind he would burn.

48.    Despite receiving evidence that Jared had assaulted Ashley, HPD, BCSO, nor BMO took steps to arrest Jared or report the events to a prosecutor's office for the filing of criminal charges.  Nor did any of these agencies offer Ashley information about obtaining a civil protection order and/or a no contact order, much less provide her assistance with obtaining such an order.

I:\11129.002\PLD\Amended Complaint\2022.02.07 Amended Complaint.docx

49.     On or about October 19, 2020, individuals with HPD, BCSO, and BMO conducted further investigations into the incident between Jared and Ashley.

50.     Despite communications with Ashley, none of these agencies instructed or advised Ashley to obtain a civil protection order.  Nor did any of these agencies take steps themselves to obtain a protective order that would restrict Jared's ability to contact Ashley and/or possess a firearm.

51.     HPD failed to take these actions despite Ashley advising now Chief England that she wanted Jared to cease all contact with her and her family and to stay away from her residence and place of employment.

52.     The communications between Ashley and England led Ashley and Mrs. Tackett to believe that England was attempting to obtain a protective order for Ashley.

53.     On October 20, 2020, HPD placed Jared on Administrative Leave pending an investigation of the October 19, 2020 incident.

54.     Despite being placed on Administrative Leave, HPD did not instruct Jared to turn in his badge or service weapon.

55.     Neither England nor anyone else with the HPD took steps to obtain a protective order for Ashley or restrict Jared's ability to possess firearms.

56.     Between October 19, 2020 and October 22, 2020, Ashley and others disclosed additional information about Jared's verbal, mental, and psychological abuse of Ashley to HPD, BCSO and BMO.

57.     Additionally, these agencies were advised about Jared's current mental state, mood swings, suicidal tendencies, *i.e.*, pointing a loaded gun at his head a threatening to kill himself, past/current depression, *i.e.*, leaving suicide notes, and other disturbing information including an ominous "goodbye text" sent from Jared to Mrs. Tackett on October 20, 2020.

58.    It was also brought to the attention of the BMO that during the early morning of October 19, 2020, Jared had ripped boards off the wall of their residence and had swung the boards towards Ashley and Tag to scare and intimidate Ashley.

59.    Ashley further advised BMO that Jared had previously been physical with her, *i.e.* had pushed her.

60.    On October 22, 2020 at approximately 3:00pm, England advised Jared that Jared must resign from HPD or that his employment would be terminated and that Jared must advise England of his decision no later than October 26, 2020.

61.    Again, England failed to collect Jared's badge or service weapon.

62.    Shortly after giving Jared this information, England spoke with Ashley.

63.    Ashley again expressed her concerns about Jared's mental state.

64.    Despite having knowledge that Ashley was fearful of Jared and his mental state, England failed to advise Ashley that Jared been given the option to resign or be fired – an event that Ashley had expressed would result in Jared attempting to harm her – or that Jared still had his badge and duty weapon.

65.    On October 22, 2020, at approximately 8:00 p.m., Ashley was present at the Coffee Corner, 120 N. Main St, Bellevue, Idaho 83313 ("Coffee Corner").

66.    On October 22, 2020, Jared while in the Coffee Corner, shot and killed Ashley and then shot himself, ending his own life.

67.    On April 20, 2021, Plaintiffs served a Notices of Tort Claim ("Notices") on the LEO Agencies.

68.     The Notices served by the Plaintiffs advised the LEO Agencies and that the Plaintiffs were asserting that the LEO Agencies had caused them damages as a result of the murder of Ashley.

69.     Each of the LEO Agencies has failed to respond to the Notices filed by the Plaintiffs.

### COUNT I
#### (*For Wrongful Death – Negligence*)

70.     Plaintiffs reincorporate the information set forth in Paragraphs 1 through 69 as if set forth herein.

71.     Jared owed a duty of care towards Plaintiffs at the time and place of the subject incident.

72.     On October 22, 2020, Jared breached said duties by shooting Ashley, causing grievous bodily harm to her person that resulted in her untimely death.

73.     Jared's actions were reckless and willful and constituted a gross deviation from reasonable standards of conduct.

74.     As a direct result of Jared's breaches of said duties, Plaintiffs have sustained economic and non-economic damages, including but not limited to funeral and burial expenses, and reasonable values for the losses of services, support, care, comfort and society due to the death of Ashley in excess of $10,000.00 to be proven at trial.

75.     Plaintiffs have been compelled to employ the services of legal counsel, McConnell Wagner Sykes & Stacey, PLLC, to institute and prosecute this claim.  Plaintiffs are

therefore entitled to reasonable attorney fees and costs pursuant to Idaho Code § 12-121, Idaho Rule of Civil Procedure 54 and any other applicable statute or rule.

76.     Plaintiffs reserve this paragraph for inclusion of a claim of punitive damages pursuant to Idaho Code § 6-1604.

## COUNT II
### (*For Negligent Infliction of Emotional Distress*)

77.     Plaintiffs reincorporate the information set forth in Paragraphs 1 through 76 as if set forth herein.

78.     As Ashley's boyfriend and intimate partner, Jared had a special relationship with Plaintiffs.

79.     Jared owed a duty of care toward Plaintiffs, *inter alia*, to not cause them emotional distress, at the time and place of the subject incident.

80.     Jared breached this duty to Plaintiffs by unlawfully killing Ashley because the likelihood of her death was a highly foreseeable cause of emotional distress to Plaintiffs.

81.     As a direct and proximate cause of Jared's breach of said duties, Plaintiffs have suffered severe emotional distress.

82.     As such, Plaintiffs are entitled to recover monetary damages from the Murphy Estate representing fair and reasonable compensation for their emotional distress in an amount in excess of $10,000.00 to be proven at trial.

83.     Plaintiffs have been compelled to employ the services of legal counsel, McConnell Wagner Sykes & Stacey, PLLC, to institute and prosecute this claim.  Plaintiffs are

therefore entitled to reasonable attorney fees and costs pursuant to Idaho Code § 12-121, Idaho Rule of Civil Procedure 54 and any other applicable statute or rule.

84.     Plaintiffs reserve this paragraph for inclusion of a claim of punitive damages pursuant to Idaho Code § 6-1604.

## COUNT III
### (*For Intentional Infliction of Emotional Distress*)

85.     Plaintiffs reincorporate the information set forth in Paragraphs 1 through 84 as if set forth herein.

86.     The wrongful death of Ashley was the result of Jared's intentional, reckless, extreme and/or outrageous conduct at the time of the subject incident.

87.     As a direct and proximate cause of Jared's intentional, reckless, extreme and/or outrageous conduct, Plaintiffs have suffered severe emotional distress.

88.     As such, Plaintiffs are entitled to recover monetary damages from the Murphy Estate representing fair and reasonable compensation for their emotional distress in an amount in excess of $10,000.00 to be proven at trial.

89.     Plaintiffs have been compelled to employ the services of legal counsel, McConnell Wagner Sykes & Stacey, PLLC, to institute and prosecute this claim. Plaintiffs are therefore entitled to reasonable attorney fees and costs pursuant to Idaho Code § 12-121, Idaho Rule of Civil Procedure 54 and any other applicable statute or rule.

90.     Plaintiffs reserve this paragraph for inclusion of a claim of punitive damages pursuant to Idaho Code § 6-1604.

///

## COUNT IV: Negligence
### (All Plaintiffs v. the LEO Agencies and England)

91.     Plaintiffs reincorporate the information set forth in Paragraphs 1 through 90 as if set forth in full herein.

92.     The LEO Agencies and England were each negligent, grossly negligent, reckless and/or acted willfully and wantonly in failing to recognize that Ashley was a victim of domestic violence and failing to take appropriate steps to protect Ashley, including *but not limited to* (a) arresting Jared, (b) forwarding information to a prosecuting attorney to file charges against Jared, (c) failing to seek a protection order for Ashley, (d) failing to restrict Jared's ability to possess a firearm, (e) failing to advise and/or assist Ashley with obtaining a protective order and restricting Jared's ability to possess a firearm.

93.     The events of October 19, 2020 amounted to a domestic assault of Ashley by Jared under Idaho Code §§ 18-918 and 18-901.

94.     Idaho Law Enforcement Agencies are obligated to protect victims from the cycle of violence, which Ashley described at length to all of these agencies.

95.     Furthermore, Idaho Statutes permit domestic violence victims to seek additional protections, through the assistance of law enforcement agencies, from their abusers including the ability for civil protection orders or no contact orders.

96.     A Civil Protection Orders and/or Criminal No Contact Order would have restricted Jared's ability to contact Ashley and/or possess a firearm.

97.     These agencies had a duty to protect Ashley from her known abuser, Jared, and failed to do so which resulted in her wrongful death.

98.     The LEO Agencies were negligent, grossly negligent, reckless and/or acted willfully and wantonly in failing to utilize Idaho Statute § 66-326 for a 24-hour Mental Hold on Jared once

information about his mental state was disclosed by Ashley and others.

99.     Idaho Statutes §§ 66-326, 66-317(12) are in place for law enforcement agencies to take action for the "mentally ill" or a "person [whose] continued liberty poses an imminent danger to that person or others, as evidenced by a threat of substantial physical harm."

100.    The information disclosed by Ashley and others between October 19, 2020 through October 22, 2020 about Jared's concerning, suicidal, and volatile mental state created a duty on the part of each of the LEO Agencies and England to conduct at a welfare check.

101.    Had a welfare check been performed, Jared's ability to possess a firearm would have been restricted.

102.    The LEO Agencies and England had a duty to protect Ashley under the laws and statutes of the State of Idaho and their failure to fulfill this duty resulted in her wrongful death.

103.

104.    HPD was negligent, grossly negligent, reckless and/or acted willfully and wantonly in failing to warn Ashley of Jared's pending termination, his possession of his service weapon and badge, and lack of protection order.

105.    HPD was aware of Ashley's imminent fear of Jared and knew of Ashley's concerns of retaliation if Jared lost his job with HPD.

106.    Despite HPD's awareness of Ashley's fears and legitimacy of the basis of these fears, HPD failed in its obligations to warn Ashley and/or to protect Ashley given the known danger Jared presented to Ashley.

107.    HPD is required to fully vet and investigate all applicants to ensure that they are fit to be police officers and protect and serve the public at large.

108.     HPD was negligent, grossly negligent, reckless and/or acted willfully and wantonly in hiring Jared without conducting a background check that would have revealed that Jared was not fit to be a law enforcement officer.

109.     HPD was negligent, grossly negligent, reckless and/or acted willfully and wantonly by failing to disclose Jared's DUI to POST when submitting Jared's challenge and waiver.

110.     HPD had a duty to disclose this information to the Idaho Post Division once it came within their purview and was verified by Jared yet HPD failed to do so.

111.     HPD was negligent, grossly negligent, reckless and/or acted willfully and wantonly by failing to timely address Jared's fitness for duty upon learning of his violent outbursts that involved Ashley.

112.     These actions/inactions allowed Jared to continue to carry a badge and a gun.

113.     HPD's action/inactions described herein constitutes negligence.

114.     As a direct and proximate result of HPD's negligence, Plaintiffs have suffered damages in an amount to be proven at trial, but not less than $10,000.00, plus interest thereon at the maximum rate allowed by law.

115.     As a direct and proximate result of the conduct of the LEO Agencies and England, Ashley was murdered by Jared.

116.     Because of this preventable, wrongful death, Plaintiffs have been subjected to serious, irreparable, and permanent damage, in excess of $10,000.00 to be proven at trial.

117.     Plaintiffs have been compelled to employ the services of legal counsel, McConnell Wagner Sykes & Stacey, PLLC, to institute and prosecute this claim.  Plaintiffs are therefore entitled to reasonable attorney fees and costs pursuant to Idaho Code § 12-121, Idaho Rule of Civil Procedure 54 and any other applicable statute or rule.

### COUNT V: VIOLATION OF SUBSTANTIVE DUE PROCESS
### (42 U.S.C. §§ 1983, 1988)
### (All Plaintiffs v. the LEO Agencies and England)

118.     Plaintiffs reincorporate the information set forth in Paragraphs 1 through 117 as if set forth in full herein.

119.     The Federal Civil Rights Act provides a civil remedy against a person, who under color of state law, deprives another of federal rights cognizable under 42 U.S.C. § 1983.

120.     At all times referred to in this *Amended Complaint and Demand For Jury Trial* ("Amended Complaint"), the LEO Agencies and England, and all those acting either in concert or in conjunction with it, or those acting independently, were acting under color of state law, and in their individual and/or official capacities as officials, agents and employees of the LEO Agencies.

121.     The LEO Agencies, and all those acting either in concert or in conjunction with the LEO Agencies, or those acting independently, while in their individual and official capacities and acting under color of state law, deprived Plaintiffs of certain rights, privileges and/or immunities which were secured by the United States Constitution and other laws, including a denial of substantive due process under the Fourteenth Amendment to the United States Constitution.  This deprivation of rights, privileges and/or immunities has caused Plaintiffs to suffer damages in amounts to be determined at trial.

122.     Specifically, the LEO Agencies' and England's affirmative conduct in knowingly, intentionally and with deliberate indifference (a) failing to arrest Jared, (b) failing to forward information to a prosecuting attorney to file charges against Jared, (c) failing to seek a protection order for Ashley, (d) failing to restrict Jared's ability to possess a firearm, (e) failing to advise and/or assist Ashley with obtaining a protective order and restricting Jared's ability to possess a firearm. violated Plaintiffs' rights, privileges and/or immunities.

123.     The LEO Agencies acted with deliberate indifference in approving development of the Subdivision and in its duty to protect Ashley and Plaintiffs from a substantial risk of harm in violation of their rights under the Fourteenth Amendment to the United States Constitutions and 42 U.S.C. § 1983.

124.     The LEO Agencies' conduct alleged hereinabove was performed with deliberate indifference to a known and obvious danger to Ashley and Plaintiffs.  The LEO Agencies' conduct constituted a state created danger in violation of the Fourteenth Amendment to the United States Constitution.

125.     As a direct and proximate result of the LEO Agencies' deprivation of the rights, privileges and/or immunities due Plaintiffs, Plaintiffs have suffered damages which have been caused by the LEO Agencies.

126.     As a result of the LEO Agencies conduct, Plaintiffs request an award of reasonable attorney' fees and costs expended as to the LEO Agencies pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for a judgment against Defendants as follows:

1.     For a money judgment in an amount to be proven at trial, but no less than $10,000.00, plus interest thereon at the maximum rate allowed by law, for economic and non-economic damages for the wrongful death of Ashley Marie Midby and infliction of emotional distress for:

   a.   Negligence by Jared;

   b.   Negligent Infliction of Emotional Distress by Jared;

   c.   Intentional Infliction of Emotional Distress by Jared;

d.   Violation of Substantive Due Process by HPD;

e.   Negligence by HPD;

f.   Violation of Substantive Due Process by BCO;

g.   Negligence by BCO;

h.   Violation of Substantive Due Process by BMO;

i.   Negligence by BMO;

j.   Violation of Substantive Due Process by England; and

k.   Negligence by England.

2.      For an award of attorneys fees and costs pursuant to, *inter alia,* Idaho Code §
12-121, Idaho Rule of Civil Procedure 54, and the Civil Rights Act; and

3.      For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rules 38(a) and 38(b) of the Idaho Rules of Civil Procedure, Plaintiffs
hereby demand a trial by a jury of not less than twelve (12) persons on all issues so triable in
this action.

**DATED** this 7th day of February 2022.

McCONNELL WAGNER SYKES & STACEY PLLC

_____/s/ Chad M. Nicholson_____

By:    Chad M. Nicholson
       Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 7th day of February 2022, a true and correct copy of the foregoing document was served by the method indicated below upon the following parties:

| | |
|---|---|
| J. Justin May<br>**ANGSTMAN JOHNSON**<br>199 N. Capitol Blvd, Ste. 200<br>Boise, Idaho 83702 | jjm@angstman.com<br>naf@angstman.com<br><br>*Attorneys for Defendant Daniel James Murphy, Sr.* |

/s/      *Antoinette Brown*
_____
Antoinette Brown, Legal Secretary

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL - Page 18**

I:\11129.002\PLD\Amended Complaint\2022.02.07 Amended Complaint.docx